1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PATRICK A.,

                   Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                   Defendant.

Case No. C23-5531-MLP

ORDER

## I.  INTRODUCTION

Plaintiff seeks review of the denial of his application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in assessing the medical opinion evidence, his testimony, the testimony of lay witnesses, and in his failure to find that Plaintiff's hand issues constituted a severe impairment at step two and/or to include at step four a corresponding hand-related limitation in his residual functional capacity ("RFC") determination. (Dkt. # 4.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II.  BACKGROUND

Plaintiff was born in 1971, has a high school education, and has worked as a solderer. AR at 33. Plaintiff was last gainfully employed in October 2020. *Id.* at 52.

In April 2021, Plaintiff applied for benefits, alleging disability as of October 12, 2020. AR at 237-43. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 123-32, 135-44. After a September 2022 hearing, the ALJ issued a decision finding Plaintiff not disabled on October 5, 2022. *Id.* at 19-34.

Using the five-step disability evaluation process,[1] the ALJ found, in pertinent part, that Plaintiff has the following severe impairments: post-traumatic stress disorder ("PTSD"), major depressive disorder, generalized anxiety disorder, left shoulder degenerative joint disease, and lumbar spine degenerative disc disease with radiculopathy. AR at 21. The ALJ subsequently determined that Plaintiff retained an RFC for light work with additional postural, exertional, environmental, and social limitations. *Id.* at 25. The ALJ found that Plaintiff could not perform his past work, but, relying on the opinion of a vocational expert ("VE") who testified that an individual with such an RFC could perform jobs existing in significant numbers in the economy, including routing clerk, collator operator, and retail price marker, the ALJ concluded that Plaintiff was not disabled. *Id.* at 34.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 3-8. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

### III.   LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (citations omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV.    DISCUSSION

### A.    The ALJ Did Not Err in Evaluating the Medical Opinion Evidence

Plaintiff challenges the ALJ's assessment of multiple medical opinions, each of which the Court addresses in turn.

#### 1.    *Legal Standards*

Under regulations applicable to this case, the ALJ is required to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported and consistent with the record. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). An ALJ's consistency and supportability findings must be supported by substantial evidence. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

1

    2.      *Consulting Examiner, ARNP Rebecca Lucas*

2

3    In October 2021, ARNP Rebecca Lucas reviewed records and examined Plaintiff in

4    conjunction with the preparation of a medical opinion regarding his physical impairments. AR

5    826-33. She diagnosed "[n]umbness and pain in [Plaintiff's] left arm and shoulder" and

6    "[r]otator cuff tear consistent with findings of diminished mobility, weakness, and pain." *Id.* at

7    832. ARNP Lucas additionally diagnosed Plaintiff with seizures due to alcoholism and alcohol

8    withdrawal and anxiety disorder. *Id.* She opined that Plaintiff could stand and walk less than two

9    hours per day due to neuropathy secondary to chronic radiculopathy, and that Plaintiff could sit

10   less than four hours per day and would need to alternate between sitting and standing. *Id*. ARNP

11   Lucas further opined that Plaintiff could lift only ten pounds occasionally and frequently. *Id.* at

12   833. She opined that Plaintiff could never climb, balance, stoop, kneel, crouch, or crawl, and that

     he could never reach due to his right shoulder rotator cuff injury. *Id.*

13   The ALJ found that ARNP Lucas' opinion was not persuasive because it was "consistent

14   [sic] with and unsupported by the objective medical evidence." AR 31. Regarding supportability,

15   the ALJ offered only the conclusory statement that the opinion was unsupported. *Id.* at 31-32. By

16   contrast, in terms of the opinion's consistency, the ALJ cited to Plaintiff's treatment records that

17   the ALJ found demonstrated "improved coordination and lower extremity weakness," along with

18   other examination notes "throughout the relevant period that show[ed] that [Plaintiff] had intact

19   strength of 5 out of 5, intact sensation, and normal and symmetrical reflexes throughout his

20   lower extremities, and a normal, steady gait." *Id.* (citing *id.* at 446, 680, 683-84, 690, 722)

21

22

23

1   (treatment records); *id.* at 31-32 (citing *id.* at 446, 652, 658, 661, 664, 681, 687, 719, 808, 813,

2   838, 842, 881, 930, 933, 937, 942, 1010) (examination notes).[2]

3        The parties dispute whether the ALJ made a typographical error in stating that ARNP

4   Lucas' opinion was "consistent," and, if so, whether the Court may interpret it otherwise. (Dkt.

5   ## 9 at 4, 12 at 10 n.1, 13 at 2-3.) Plaintiff attempts, however, to create ambiguity where none

6   exists. (*See* dkt. ## 9 at 4, 13 at 2-3.) Contrary to Plaintiff's argument otherwise, review of the

7   context surrounding the ALJ's consistency finding clearly demonstrates that the ALJ found

8   ARNP Lucas' opinion *inconsistent* with the medical record evidence. *See* AR at 31. The ALJ's

9   use of the word, "consistent," indeed constituted a typographical error, and the ALJ's subsequent

10  related findings and record citations regarding Plaintiff's improvement and other "normal"

11  examination and treatment notes suffice to render the typographical error harmless.[3] *See Gervais*

12  *v. Colvin*, 2013 WL 3200518, at *6 (C.D. Cal. June 24, 2013) (noting that "[t]ranscription or

13  similar errors are harmless if, notwithstanding the error, the ALJ gave adequate explanation of

14  her findings elsewhere in her decision") (citing *Wright v. Comm'r of Soc. Sec.*, 386 F. App'x

15  105, 109 (3d Cir. 2010) (Tashima, J., sitting by designation) (ALJ's misstatements in written

16  decision harmless error when regardless of them "ALJ gave an adequate explanation supported

17  by substantial evidence in the record")).

18

19

---

20  [2] In opposition, the Commissioner offers several additional record citations not provided by the ALJ. (*See* dkt. # 12 at 10 (citing AR at 684, 690, 749).) The Court limits its review to those reasons and records

21  cited by the ALJ. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (court's review of the ALJ's decision is "based on the reasoning and factual findings offered by the ALJ –

22  not *post hoc* rationalizations").

23  [3] The cases cited by Plaintiff in support of his argument that the Court is unable to correct for the typographical error are inapposite as neither involved typographical errors. (*See* dkt. # 13 at 2 (citing *Ceguerra v. Sec'y of Health & Human Servs.*, 933 F.2d 735, 738 (9th Cir. 1991); *Bray*, 554 F.3d at 1225-26).)

Turning to the consistency findings themselves, Plaintiff argues that the ALJ erred in finding that his improvement in coordination and lower extremity weakness following his November 2020 hospitalization rendered ARNP Lucas' opinion inconsistent. (Dkt. # 9 at 5.) Specifically, Plaintiff argues that the ALJ erred when he failed to consider whether Plaintiff was disabled prior to his improvement upon his hospital discharge. (*Id.*)

Here, Plaintiff alleged an onset date of October 12, 2020, and he was hospitalized from November 11, 2020, through November 16, 2020, after suffering from an isolated seizure and pancreatitis related to alcohol withdrawal. AR at 21, 446. Accordingly, given those dates, Plaintiff's argument is essentially that the ALJ failed to consider whether the cited improvement additionally took place during the approximately four-week period from October 12, 2020, through November 16, 2020. However, as the Commissioner notes, this argument lacks merit because, to be disabling, an impairment must prevent a claimant from working for twelve continuous months. (Dkt. # 12 at 11 (citing *Barnhart v. Walton,* 535 U.S. 212, 217 (2002)).) Accordingly, the case relied on by Plaintiff, *Smith v. Kijakazi* (dkt. # 9 at 5), is factually distinguishable because the relevant period in that case spanned more than six years (2012-2019), and the ALJ there failed to consider whether Plaintiff's improvement existed during a time period more than two-years long from within the overall six-year relevant period (late 2012 through early 2015) – a time period that, unlike here, would have satisfied the twelve-month requirement. *See* 14 F.4th 1108, 1114-16 (9th Cir. 2021) (holding that the ALJ erred in disregarding all of the claimant's testimony, including the portion about his early-period incapacity, on the basis of inconsistencies only applicable to the late-period testimony).

Plaintiff further argues that the ALJ's improvement findings were inadequate because his symptoms did not successfully resolve. He contends that mere improvement without evidence of

the successful relief of symptoms is insufficient. (*See* dkt. # 9 at 5 (citing *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("some improvement does not mean that [a claimant's] impairments no longer seriously affect [his] ability to function in a workplace")).)

However, in his opening brief, Plaintiff fails to cite to record evidence in support of his argument, and also fails to address the record evidence specifically cited by the ALJ in support of the ALJ's consistency findings. (*See* dkt. # 9 at 5.) In reply, Plaintiff similarly fails to address the voluminous record evidence cited by the ALJ, citing only to ARNP Lucas' own examination and a March 2022 follow-up examination notation from Dr. Kirk Danielson. (Dkt. # 13 at 3.)

The additional record from Dr. Danielson, as cited by Plaintiff in reply, does not, however, demonstrate that the ALJ erred in evaluating ARNP Lucas' opinion. Dr. Danielson's March 2022 visit notes reflect that following Plaintiff's prior November 2021 visit and MRI, Plaintiff declined further interventions, including an epidural, based on his "limited gains in symptoms." *See* AR at 1009 (noting "[a] decision was made at that time to hold on further conservative or interventional treatment"); *see also id.* at 877 (Plaintiff declines intervention unless his symptoms worsen). Moreover, the March 2022 visit notes that Plaintiff cites regarding his back and leg impairment diagnoses actually support the ALJ's improvement finding. *Id.* (noting that Plaintiff's symptoms had "evolved," and that, when standing, "his leg symptoms are less aggravated;" that Plaintiff is "typically moving when he is upright;" and that Plaintiff "has had no significant focal lower extremity weakness, or change in sensory function since last being seen").

Finally, the ALJ reasonably concluded that ARNP Lucas' opinion was inconsistent with the longitudinal record given the generally normal treatment records and examination findings. (*See* dkt. # 12 at 10); *see also* AR at 446, 680, 683-84, 690, 722, 652, 658, 664, 681, 687, 719, 808, 813, 838, 842, 881, 930, 933, 937, 942, 1010. Plaintiff fails to address these records, as cited by the ALJ, which themselves constitute substantial evidence in support of the ALJ's ultimate consistency finding. Accordingly, because the ALJ reasonably found that ARNP Lucas' opinion was inconsistent with the longitudinal record, the ALJ did not err in discounting the opinion.

3.    *ALJ's Evaluation of Medical Opinions Regarding Plaintiff's Mental Impairments*

a.    **Examining DSHS Psychologist, Dr. Kimberly Wheeler**

In May 2021, Dr. Kimberly Wheeler examined Plaintiff and diagnosed adjustment disorder with mixed anxiety and depressed mood and alcohol use disorder in early remission. AR at 378. She opined that Plaintiff possessed multiple moderate functional limitations along with marked limitations in terms of his abilities to understand, remember, and persist in tasks by following detailed instructions; to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances without special supervision; and to communicate and perform effectively in a work setting. *Id.* at 379. Ultimately, Dr. Wheeler opined that Plaintiff's overall mental impairments caused marked limitations. *Id.*

The ALJ found Dr. Wheeler's opinion not persuasive, reasoning that it was "inconsistent with and unsupported by the medical evidence which shows generally normal mental status examinations and some improvement with symptoms with medication." AR at 32. The Court's review of "the ALJ's full explanation," in accordance with *Kaufmann v. Kijakazi*, reveals that earlier in the decision, the ALJ pointed to numerous record citations in support of his findings

regarding Plaintiff's "normal" or "mild" mental status examinations ("MSEs") and improvement

with medication. *See* 32 F.4th 843, 851 (9th Cir. 2022); *see also* AR at 29-30 (citing *id.* at 446,

651, 652, 655, 658, 661, 663, 664, 680, 808, 813, 838, 841, 842, 930, 932, 933, 936, 937, 940,

651).

Plaintiff argues that the ALJ erred in his evaluation of Dr. Wheeler's opinion because Dr.

Wheeler's MSE was not "generally normal." (Dkt. # 9 at 7); AR at 32. However, in so arguing,

Plaintiff mistakenly conflates the finding that the ALJ made regarding the *consistency* of Dr.

Wheeler's opinion as it compared to other examinations in the longitudinal record with a finding

regarding the *supportability* of Dr. Wheeler's opinion in light of her own examination findings.

Such a construction misrepresents the ALJ's findings. *See* AR at 32 (referring to "generally

normal mental status examination*s*," plural, in comparing Dr. Wheeler's opinion with other

MSEs in the longitudinal record); (*cf.* dkt. # 9 at 7.)

Nevertheless, even if, as Plaintiff suggests, the ALJ's persuasiveness findings could be

construed to include an erroneous characterization of Dr. Wheeler's own MSE as "generally

normal," any such error would pertain only to the *supportability* – not the consistency – of Dr.

Wheeler's opinion. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (Regarding

"supportability," the regulations provide that "[t]he more relevant the objective medical evidence

and supporting explanations presented by a medical source are to support his or her medical

opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions

or prior administrative medical finding(s) will be."); *cf.* 20 C.F.R. §§ 404.1520c(c)(2),

416.920c(c)(2) (Regarding "consistency," the regulations provide that "[t]he more consistent a

medical opinion(s) or prior administrative medical finding(s) is with the evidence from other

medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)

1   or prior administrative medical finding(s) will be."). And, for the reasons set forth below, the

2   Court determines that the ALJ's stated consistency findings were themselves supported by

3   substantial evidence – a determination that, on its own, constitutes a sufficient basis for the ALJ

4   to conclude that Dr. Wheeler's opinion was unpersuasive. *See Woods*, 32 F.4th at 792-94 & n.4

5   ("consistency" and "supportability" constitute two distinct factors that should be treated

6   separately).

7           Regarding the ALJ's consistency findings as to Dr. Wheeler's opinion, Plaintiff argues

8   without elaboration that "unspecific" improvement is not a legally sufficient reason to reject a

9   medical opinion. (Dkt. # 9 at 7.) However, the ALJ's improvement findings here were not

10  "unspecific" or "nonspecific" given that the ALJ specifically cited improvement to Plaintiff's

11  "anxiety," "mood," "depression," and to his "sleep and nightmares." AR at 29 (citing *id.* at 680,

12  651, 663, 841, 930, 932, 936). Moreover, Plaintiff again fails to address the evidence specifically

13  cited by the ALJ in support of his rejection of Dr. Wheeler's opinion, including the evidence

14  cited by the ALJ regarding Plaintiff's "mild" and/or "generally . . . normal" MSEs. *See Indep.*

15  *Towers of Wash. v. Washington,* 350 F.3d 925, 929 (9th Cir. 2003) (It is not this Court's job to

16  "manufacture arguments where none is presented."). Those unchallenged reasons were

17  themselves sufficient to support the ALJ's determination that Dr. Wheeler's opinion lacked

18  consistency with the longitudinal record, and thus was not persuasive. Accordingly, because the

19  ALJ reasonably found that Dr. Wheeler's opinion was inconsistent with the longitudinal record,

20  the ALJ did not err in discounting the opinion.

21              **b.      Examining DSHS Psychologist, Dr. David Morgan**

22          In September 2022, DSHS psychologist, Dr. David Morgan, examined Plaintiff and

23  diagnosed him with panic disorder and major depressive disorder. AR at 1015. Dr. Morgan

opined that Plaintiff possessed mostly moderate limitations, along with marked limitations in terms of his abilities to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances without special supervision; and to communicate and perform effectively in a work setting. *Id.* at 1016. Ultimately, Dr. Morgan opined that Plaintiff's overall mental impairments caused moderate limitations. *Id.* The ALJ found Dr. Morgan's opinion "partially persuasive," reasoning that Dr. Morgan's opined mild to marked limitations were reasonable, but that his opined marked limitations were "inconsistent and unsupported by the treatment records and his own examination which show normal mental status examinations despite having a depressed affect at times." *Id.* at 32.

Plaintiff argues that the ALJ's findings are "illogical" and that the ALJ has mischaracterized Dr. Morgan's examination findings and improperly substituted his own lay findings for those of Dr. Morgan. (Dkt. ## 9 at 8, 13 at 4.) Again, as discussed above with Dr. Wheeler's opinion, even if the Court were to agree that the ALJ mischaracterized Dr. Morgan's own examination as "normal," thus undermining the ALJ's supportability finding regarding Dr. Morgan's opinion, such a finding does not undermine the ALJ's ultimate persuasiveness evaluation because supportability and consistency are distinct factors. *See Woods*, 32 F.4th at 792-94 & n.4 (consistency and supportability constitute two distinct factors that should be treated separately). Here, again, for the reasons set forth below, the Court determines that the ALJ's stated consistency findings regarding Dr. Morgan's opinion were supported by substantial evidence, which, on its own, constitutes a sufficient basis for upholding the ALJ's rejection of Dr. Wheeler's opinion.

First, regarding consistency, the ALJ did not inappropriately rely solely on his own interpretation of the examination findings in the longitudinal record as Plaintiff suggests. Instead,

1    as noted by the Commissioner, the ALJ specifically relied in part on the findings and opinions

2    from state agency psychologists, Drs. Richard Borton and Vincent Gollogly, whose opinions the

3    ALJ found persuasive.[4] AR at 32. The Court acknowledges that, in his reply, Plaintiff suggests

4    that the state agency psychologists' opinions "lacked foundation" because they were

5    non-examining physicians and because it was unclear whether they had reviewed Dr. Wheeler's

6    opinion. (Dkt. # 13 at 4-5.)

7        To the extent that Plaintiff suggests that non-examining sources' opinions may not be

8    considered more persuasive than those of examining or treating sources, the Ninth Circuit has

9    already rejected that very argument. In *Wood*s, the Ninth Circuit clarified that, under the 2017

10   revised regulations, there is no longer any hierarchy in the treatment of physicians' opinions. 32

11   F.4th at 792 (discussing Revisions to Rules Regarding the Evaluation of Medical Evidence

12   ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan. 18, 2017) and

13   holding that "[t]he revised social security regulations are clearly irreconcilable with Ninth Circuit

14   caselaw according special deference to the opinions of treating and examining physicians on

15   account of their relationship with the claimant.")). Moreover, review of the record demonstrates

16   that, at a minimum, state agency psychologist, Dr. Gollogly, indeed reviewed and considered Dr.

17   Wheeler's May 2021 opinion and examination. *See* AR at 137.

18       Plaintiff additionally suggests that the ALJ erred in evaluating the consistency of Dr.

19   Morgan's opinion because Drs. Morgan's and Wheeler's opinions were themselves consistent

20

21   [4] The ALJ found Drs. Borton's and Gollogly's respective September 2021 and February 2022 opinions "persuasive," reasoning that they were consistent with Plaintiff's generally normal MSEs and his improvement with medication. AR at 32. Both Drs. Borton and Gollogly opined that Plaintiff had no

22   understanding and memory limits, and, at most, was moderately limited in his social interactions, concentration and persistence, and his adaption limitations. *Id.* at 130-31,141-43. Both Drs. Borton and Gollogly also agreed that Plaintiff was "not significantly limited" in his "ability to perform activities

23   within a schedule, maintain regular attendance, and be punctual within customary tolerances." *Id.* at 130, 142.

regarding Plaintiff's ability to return to work. (Dkt. # 9 at 8.) Again, the ALJ cited to a plethora of other evidence in support of his consistency findings that Plaintiff fails to address, which itself constituted substantial evidence in support of the ALJ's consistency findings. *See* AR at 29-30 (citing *id.* at 446, 651, 652, 655, 658, 661, 663, 664, 680, 808, 813, 838, 841, 842, 930, 932, 933, 936, 937, 940); *see also Indep. Towers*, 350 F.3d at 929 (Court will not "manufacture" arguments for Plaintiff). Where the ALJ's interpretation of the evidence is reasonable and supported by substantial evidence, as it was here, the Court will not reweigh the evidence, even if the ALJ's interpretation is not the only reasonable one. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

> **B.**     **The ALJ Did Not Err in Evaluating Plaintiff's Testimony**

The ALJ offered multiple reasons for rejecting Plaintiff's testimony, including some that were specifically applicable to Plaintiff's testimony regarding his mental and/or physical impairments. *See* AR at 26-28, 30 (ALJ's discussion and analysis of physical impairments); *id.* at 28-30 (ALJ's discussion and analysis of Plaintiff's mental impairments). However, regarding both types of testimony, the ALJ found that Plaintiff presented objective medical evidence establishing that his medically determinable impairments could cause the symptoms alleged, and no affirmative evidence of malingering. *Id.* at 26. Accordingly, the ALJ was required to provide "specific, clear and convincing reasons" for rejecting Plaintiff's symptom testimony concerning the intensity, persistence, and limiting effects of his mental and physical impairments. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)); *accord Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (confirming that the "clear and convincing" standard continues to apply).

1       At the outset, Plaintiff generally argues that the ALJ failed to provide sufficiently specific

2  reasons for discounting his testimony as to both his mental and his physical impairments,

3  asserting that the ALJ failed to provide a "logical nexus" between the medical evidence and his

4  conclusions. (Dkt. # 9 at 10-11.) The Court disagrees. While the ALJ indeed summarized the

5  medical evidence in addressing Plaintiff's testimony, the ALJ also explained why Plaintiff's

6  symptoms were not as limiting as he alleged, highlighting specific treatment records and

7  examination findings concerning both Plaintiff's physical and mental impairments that

8  contradicted and/or undermined the limitations to which he testified. *See* AR at 28-30 (records

9  regarding mental impairments); *id.* at 26-28, 30 (records regarding physical impairments).

10      Additionally, Plaintiff also suggests that the ALJ inappropriately required his testimony

11  be "entirely consistent with the medical evidence." (Dkt. # 9 at 13 (citing AR at 26).) Plaintiff,

12  however, misrepresents the ALJ's related finding. As noted above, the ALJ stated that Plaintiff's

13  symptoms were "not entirely consistent with the medical evidence *and* other evidence in the

14  record for the reasons explained in this decision." AR at 26 (emphasis added). Accordingly, the

15  ALJ considered all of the evidence – not just the medical evidence.

16      Moreover, the Ninth Circuit's ruling in *Smartt* suggests that Plaintiff misreads Ninth

17  Circuit precedent. 53 F.4th at 498. The *Smartt* Court agreed "an ALJ may not 'reject a claimant's

18  subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged

19  severity of the pain.'" *Id.* (discussing and quoting *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir.

20  2005)). However, the *Smartt* Court confirmed that "[w]hen objective medical evidence in the

21  record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as

22  undercutting such testimony." *Id.* It reasoned that an ALJ is not required "to simply accept a

23  claimant's subjective symptom testimony notwithstanding inconsistencies between that

testimony and the other objective medical evidence in the record, allowing a claimant's subjective evidence to effectively trump all other evidence in a case." *Id.* at 499 (noting that "the standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince").

The Court turns below to Plaintiff's additional arguments regarding the ALJ's evaluation of his testimony that were specific to either his mental impairments and/or physical impairments.

### 1. Plaintiff's Testimony Regarding His Mental Impairments

The ALJ summarized Plaintiff's testimony regarding his mental impairments and explained that he discounted it for the same reasons that he found the opinions from Drs. Wheeler and Morgan not persuasive, including: (1) its inconsistency with Plaintiff's "largely unremarkabl[e]" presentation at medical appointments and MSEs that were "generally within normal limits," AR at 28, 29 (citing *id.* at 446, 651, 652, 655, 658, 661, 663, 664, 680, 808, 813, 838, 841, 842, 930, 932, 933, 936, 937, 940); and (2) medical evidence of Plaintiff's symptom improvement with medication, *id.* at 29 (citing *id.* at 680, 651, 663, 841, 930, 932, 936).[5]

Plaintiff argues that the ALJ "brazen[ly]" mischaracterized Drs. Wheeler's and Morgan's examinations in discounting his testimony regarding his mental impairments. (Dkt. # 9 at 11-12.) However, Plaintiff fails to explain how the ALJ's factual descriptions of the psychological consulting examinations were inaccurate. (*Id.*); *see also* AR at 30 (ALJ's description of the examinations). Instead, Plaintiff simply reargues the ALJ's evaluation of Drs. Morgan's and Wheeler's opinions, contending that his testimony was consistent with their opined marked

---

[5] In opposition, the Commissioner offers several additional record citations not provided by the ALJ. (Dkt. # 12 at 3 (citing AR at 508, 515, 846, 850, 859).) Again, the Court limits its review to those reasons and records cited by the ALJ. *See Bray*, 554 F.3d at 1225-26. However, the Court notes that several medical records appear more than once within the AR, and that some of the Commissioner's additional citations appear to be to records that are duplicative of other records the ALJ already cited.

functional limitations. (Dkt. # 9 at 11-12.) As discussed, the Court finds no error in the ALJ's

evaluation of Drs. Morgan's and Wheeler's opinions. Nor does the Court find any error in the

ALJ's factual descriptions of their examinations. *See* AR at 30; *Indep. Towers*, 350 F.3d at 929

(Court will not "manufacture" arguments for Plaintiff).

Plaintiff also again argues that the ALJ erred in finding improvement on medication.

(Dkt. # 13 at 6.) However, this time, Plaintiff cites to his own testimony that his medications

helped "some," but that they were not completely effective at eliminating his symptoms. (*Id.*

(citing AR at 77).)[6] Plaintiff thus argues that because he "clearly did not lie" to the ALJ

regarding his improvement, the ALJ must have erred. *Id.* Plaintiff, however, overlooks that it is

"the ALJ [who] is responsible for determining credibility, resolving conflicts in medical

testimony, and for resolving ambiguities." *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020)

(quoting *Andrews*, 53 F.3d at 1039). The ALJ is not required to accept Plaintiff's testimony as

true, and, here, the ALJ cited to clear and convincing reasons that contradicted Plaintiff's

testimony. *See id.*; *see also* AR at 680, 651, 663, 841, 930, 932, 936.

Plaintiff also argues that the ALJ erred in discounting his testimony because while his

mental impairments improved with medications, the medications did not successful relieve all of

his symptoms. (*See* dkt. # 13 at 6.) The ALJ may consider the effect of medical treatment on a

claimant's functioning when evaluating mental impairments. 20 C.F.R. §§ 404.1520a(c)(1),

416.920a(c)(1). "Symptoms may wax and wane during the progression of a mental disorder,"

*Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014), and "evidence of medical treatment

successfully relieving symptoms can undermine a claim of disability." *Wellington*, 878 F.3d at

---

[6] In response to the ALJ's question regarding whether his medication helped, Plaintiff stated that while "[i]t helps some," "it doesn't take away everything," noting that it made him dizzy and tired at times. AR at 77. However, Plaintiff admitted that it controlled his anxiety to some degree. *Id.*

876; *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)

("Impairments that can be controlled effectively with medication are not disabling for the

purpose of determining eligibility for SSI benefits."). Here, the ALJ explicitly acknowledged that

Plaintiff continued at times to suffer from a low mood and anxious effect even while on

medication, but nevertheless accurately noted that Plaintiff's mood, anxiety, depression, and

sleep and nightmares also showed improvement following his use of gabapentin, Prazosin, and

Seroquel. *See* AR at 29 (citing *id.* at 680, 651, 841, 932, 936).

Notably, the ALJ relied on Plaintiff's improvement on medication in combination with

other mild or normal examination findings in discounting his related testimony. *See* AR at 28,

29. Even if, as Plaintiff alleges, his improvement on medications alone did not support the ALJ's

rejection of his testimony, the additional evidence cited by the ALJ – in combination with those

improvement findings – constitutes substantial evidence that supported the ALJ's evaluation of

his testimony. Plaintiff, however, has not challenged or specifically addressed this additional

evidence relied on by the ALJ, which includes numerous other MSE findings in the longitudinal

record that the ALJ has accurately characterized as "mild" and/or "generally. . . normal." (*See*

dkt. ## 9 at 8-11, 13 at 5-10); AR at 29 (citing *id.* at 446, 651, 652, 655, 658, 661, 663, 664, 680,

808, 813, 838, 841, 842, 930, 932, 933, 936, 937, 940). In particular, this unchallenged evidence

typically showed that Plaintiff possessed normal and/or intact attention and concentration, intact

memory, and was cooperative, thus undermining Plaintiff's alleged difficulties with memory,

concentration, and the ability to get along with others. *See* AR at 29 (citing *id.* at 446, 651, 652,

655, 658, 661, 663, 664, 680, 808, 813, 838, 841, 842, 930, 932, 933, 936, 937, 940).

1          2.      *Plaintiff's Testimony Regarding his Physical Impairments*

2          Similar to Plaintiff's testimony regarding his mental impairments, the ALJ summarized

3  Plaintiff's testimony regarding his physical impairments and explained that he discounted it for

4  the same reasons that he discounted ARNP Lucas' opinion, including: (1) inconsistent treatment

5  records and examination notes showing "intact motor strength at 5 out of 5 throughout his lower

6  extremities, sensation to light touch intact in lower extremity dermatomes, . . . normal and

7  symmetrical reflexes throughout," and "a steady gait," AR at 26-27 (citing *id.* at 446, 652, 658,

8  661, 664, 680, 681, 683-84, 687, 690, 719, 722, 808, 813, 838, 842, 881, 930, 933, 937, 942,

9  1010); and (2) improved coordination and lower extremity weakness, *id.* at 26, 30 (citing *id.* at

10  446, 680, 683-84, 690). The ALJ also cited two additional reasons for discounting Plaintiff's

11  testimony regarding his physical impairments: (1) the October 2021 consultative examination by

12  ARNP Lucas, *id.* at 28 (discussing *id.* at 826-33); and (2) Plaintiff's activities of daily living

13  ("ADLs") – including his light housework, laundry, meal preparation, and dishwashing. *Id.* at 30.

14          Plaintiff argues that the ADLs cited by the ALJ do not support the ALJ's rejection of his

15  testimony. The Court agrees. "[T]he mere fact that a plaintiff has carried on certain daily

16  activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in

17  any way detract from [his] credibility as to [his] overall disability. One does not need to be

18  'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.

19  2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citations omitted)

20  ("disability claimants should not be penalized for attempting to lead normal lives in the face of

21  their limitations").

22          Without elaboration, Plaintiff also argues that the ALJ mischaracterized ARNP Lucas'

23  examination records. (Dkt. # 9 at 11.) Again, as with Plaintiff's mental impairment testimony,

Plaintiff fails to explain how the ALJ's factual description of ARNP Lucas' examination was inaccurate. *Id.*; *see also* AR at 28 (ALJ's description of the examinations). Instead, Plaintiff simply reargues the ALJ's evaluation of ARNP Lucas' opinion, asserting that his testimony was consistent with ARNP Lucas' opinion that he was limited to sedentary work less than six hours per day. (Dkt. # 9 at 11-12.) For the reasons above, the Court found no error in the ALJ's evaluation of ARNP Lucas' opinion; nor does the Court find any error in the ALJ's factual descriptions of her examination. *See* AR at 28.

Finally, the ALJ also relied on additional reasons for discounting Plaintiff's testimony regarding his physical impairments, including the specific inconsistencies listed above. *See, e.g.,* AR at 26-27 (citing *id.* at 446, 652, 658, 661, 664, 680, 681, 683-84, 687, 690, 719, 722, 808, 813, 838, 842, 881, 930, 933, 937, 942, 1010). Again, Plaintiff fails to address these specific findings, which themselves constitute sufficient reasons for discounting Plaintiff's related testimony. *See Indep. Towers of Wash.*, 350 F.3d at 929 (Court will not "manufacture" arguments for Plaintiff). For these reasons, the ALJ's evaluation of Plaintiff physical and mental impairment testimony was supported by substantial evidence, and the ALJ did not err in his assessment of the testimony.

### C.    The ALJ Did Not Err in Evaluating the Lay Witness Testimony

Plaintiff's girlfriend, V.G., and his son, J.A., submitted third party function reports in support of his application, the content of which largely mirrored Plaintiff's own testimony regarding his mental and physical impairments. *See* AR at 329-36 (V.G. function report); *id.* at 278-89 (J.A. function report). The ALJ discounted their testimony "for the same reasons" that he discounted Plaintiff's testimony, reasoning that it was "inconsistent with and unsupported by objective findings in the record." *Id.* at 32.

Plaintiff argues that the ALJ erred because he failed to provide germane reasons sufficient to reject the lay witness testimony. The Commissioner counters that the ALJ is no longer required to articulate his consideration of lay witness opinions under the controlling regulations, but nevertheless argues that the ALJ was entitled to reject the testimony for the same reasons that he rejected Plaintiff's testimony. (Dkt. # 12 at 5-6.)

The Court agrees that it need not resolve the issue regarding the precise standard that applies to the lay testimony because, regardless of the standard, J.A.'s and V.G.'s statements describe the same physical and mental limitations to which Plaintiff testified, and, for the reasons above, Plaintiff has not shown that the ALJ erred in discounting his testimony. Accordingly, the ALJ also provided adequate reasons for discounting G.S.'s testimony. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony"); *Johnson v. Kijakazi*, 2022 WL 3998572, at *2 (9th Cir. Sep. 1, 2022) (finding harmless error in ALJ's failure to address lay statements where the lay statements were similar to plaintiff's properly rejected testimony in a case applying the 2017 regulations).

**D.    The ALJ Did Not Err at Steps Two and Four in Evaluating Plaintiff's Hand Impairments and Related Symptoms**

Plaintiff also argues that the ALJ erred at step two when he failed to find that his hand tremors in both hands and his reduced grip strength in his left hand constituted severe impairments. (Dkt. # 9 at 15-16.) Alternatively, Plaintiff argues that the ALJ failed to account for his resulting reduced grip strength and diminished fine motor skills and coordination at step four

1    in assessing his RFC. (*Id.* at 16.) In support, Plaintiff cites to the October 2021 physical

2    examination and opinion from ARNP Lucas.[7] (*Id.* (citing AR at 830, 832).)

3           The Commissioner does not address Plaintiff's step two argument, but instead counters

4    that the ALJ adequately accounted for Plaintiff's hand issues when he limited him to light work

5    at step four.[8] (Dkt. # 12 at 11-12.) The Commissioner notes that ARNP Lucas – whose opinion

6    the ALJ rejected – was the only medical source to assess any manipulative limitations, and also

7    correctly notes that ARNP Lucas' assessed manipulative limitations were based primarily on

8    Plaintiff's shoulder issues – not hand tremors. Moreover, the Commissioner asserts that any error

9    at step four would have been harmless because the jobs set forth in the ALJ's step five

10   determination were, in fact, consistent with the manipulative limitations opined to by ARNP

11   Lucas, as testified to by the VE. (*Id.*); *see also* AR at 119 (VE testimony).

12          The ALJ did not err at step two because Plaintiff failed to offer "objective medical

13   evidence from an acceptable medical source" establishing that he suffered from hand tremors;

14   nor did Plaintiff provide symptom testimony that supported a finding that his hand tremors

15   constituted a severe impairment. *See* 20 C.F.R. §§ 404.1521(a)*; Smolen*, 80 F.3d at 1290. As

16   noted, only ARNP Lucas observed such tremors in her October 2021 examination, and even

17   ARNP Lucas failed to diagnose Plaintiff with hand tremors. AR at 832. Moreover, while the ALJ

18

19   [7] ARNP Lucas observed during Plaintiff's examination that "[t]remor in [Plaintiff's] hands makes fine
     motor skills difficult," and that his "[g]rip strength [was] 5/5 on his right hand and 3/5 on his left hand."

20   AR at 830. However, she did not diagnose hand tremors or any hand issues, for that matter. *Id.* at 832. In
     terms of manipulative restrictions, ARNP Lucas opined that Plaintiff was "frequently" able to finger and
     feel, but that he could never reach because of his right shoulder rotator cuff tear. *Id.* at 833.

21

22   [8] This may be explained by Plaintiff's failure to characterize the issue as a step two *and* step four issue in
     his assignment of errors. (Dkt. # 9 at 1.) Instead, Plaintiff characterized the issue in his assignments of
     error solely as one regarding the ALJ's assessment of his RFC. (*Id.*) However, Plaintiff subsequently

23   argued later in his opening brief that the ALJ erred at step two as well. (*Id.* at 16.) The Court has
     addressed the alleged step two error and finds that no further briefing from the Commissioner is necessary
     or warranted because the step two issue is without merit. Accordingly, Plaintiff's inartful assignment of
     error has not prejudiced the Commissioner.

1   acknowledged Plaintiff's "tremulous" condition in conjunction with his November 2020

2   hospitalization, that particular "tremulous" condition was related to Plaintiff's alcohol

3   withdrawal, for which he had been hospitalized, and which improved upon his subsequent

4   discharge. *See id.* at 26 (citing *id.* at 446 (Plaintiff's discharge following hospitalization for

5   delirium tremens and a seizure related to alcohol withdrawal)).

6          Plaintiff likewise did not provide any symptom testimony that would have supported a

7   step two finding that he suffered from hand tremors – let alone hand tremors that constituted a

8   severe impairment at step two.[9] *See* AR at 40-122. Nor did Plaintiff reference or list hand

9   problems or tremors in his August 2021 function report. *See id.* at 290-91 (stating that he has "no

10  problems" shaving).

11         The ALJ also did not err at step four in assessing Plaintiff's RFC limitations as pertained

12  to his hand issues. Plaintiff concedes in reply that the ALJ's assessed RFC indeed accounted for

13  his weakened grip, but Plaintiff nevertheless continues to argue that the ALJ's RFC assessment

14  failed to account for his difficulty with fine motor skills as caused by hand tremors. (Dkt. # 13 at

15  9.) However, neither the objective medical evidence nor Plaintiff's testimony adequately

16  established hand tremors as a limitation on Plaintiff's functional abilities. The ALJ here

17  sufficiently considered ARNP Lucas' observations and opinion in evaluating the medical

18  evidence and testimony and in assessing Plaintiff's RFC – including ARNP Lucas' lone

19  observation regarding Plaintiff's tremors.[10] *See* AR at 28 (ALJ noted ARNP Lucas' observation

20

21  [9] Plaintiff testified that during an industrial accident in 2000, he was working as a carpenter and injured
    his right wrist, rotator cuff, and shoulder, after which he had two surgeries on his hand. AR at 96-97.

22  While he testified that he lost full range of motion in his right index finger, wrist, and thumb as a result of
    the accident, Plaintiff did not testify to hand tremors. *See id.*

23  [10] Additionally, as noted by the Commissioner, even though the ALJ did not adopt ARNP Lucas'
    limitation to frequent handling and fingering, the VE explained that the jobs to which she testified

regarding tremors and coordination). For the reasons already discussed, the Court has found the ALJ did not err in discounting ARNP Lucas' opinion. The Court similarly finds that the ALJ also did not error in his assessment of Plaintiff's RFC.

### V.   CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED**, and this case is **DISMISSED** with prejudice.

Dated this 16th day of November, 2023.

MICHELLE L. PETERSON
United States Magistrate Judge

---

nevertheless would satisfy that limitation opined to by ARNP Lucas because they, in fact, required, at most, frequent handling and fingering. AR at 120. Plaintiff has not pointed to any medical evidence, opinion or otherwise that would have restricted him to something less than frequent handling and fingering, as opined to by ARNP Lucas.